# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN NELSON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>A. K. SCRIBNER, et al.,<br><br>　　　　　Defendants.<br>　　　　　　　　　　　　　　　／ | CASE NO. 1:03-cv-5796-OWW-LJO (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(Doc. 42) |

I.　Defendant's Motion for Summary Judgment

　　A.　Procedural History

Plaintiff Stephen Nelson ("plaintiff") is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's amended complaint, filed December 10, 2003, against defendant Oxford ("defendant") for retaliation.[1] On November 2, 2004, defendant filed a motion for summary judgment. (Docs. 42, 43.) Plaintiff filed an opposition on January 3, 2005, and defendant filed a reply on January 6, 2005.[2] (Docs. 47, 48.)

///

///

---

[1] On May 25, 2004, plaintiff's due process claims were dismissed from this action for failure to state a claim, and defendants Scribner, Goddard, Pope, Marshall, and Yamamoto were dismissed from this action based on plaintiff's failure to state any claims upon which relief may be granted against them. (Doc. 23.)

[2] Plaintiff was notified of the requirements for opposing a summary judgment motion on June 25, 2004. (Doc. 31.)

1

B.     Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

///

return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

C.   Undisputed Facts

1.  On March 27, 2001, prison administrators issued a memorandum that complements and clarifies the application of the Departmental Operations Manual, § 53060.10, involving law library access and obstreperous or unruly prisoners using law library services.  As clarified, "[i]f the [inmate's] behavior is an abuse or misuse of law library resources, facilities, and/or staff and is deemed excessively inappropriate (e.g. attempted or actual theft of library items,

3

<div style="padding-left: 2em;">

destruction of State property assigned to the library, gross disrespect of staff or other inmates, or any act or attempted act of violence) the library staff member will document the behavior on a CDC 115. The inmate will be temporarily suspended from the library until the adjudication of the CDC 115. The reporting staff will also prepare a CDC-128 B specifying the dates of the suspension will [sic] be prepared for signatures by reporting staff, the hearing officer, the Chief Disciplinary Hearing Officer, and the Warden or Chief Deputy Warden to be used if the inmate is found guilty and the hearing officer recommends the suspension be extended for up to 90 days from the date of the rules violation per Title 15, Division 3, Sections 3314, 3315, and DOM 53060.10. If the inmate is on Priority Legal User status (has a verified court deadline within 30 days), limited law library services will be provided to such an extent as not to obstruct his access to the courts. These services will include the copying of those legal documents required to meet the deadline, and either paging or controlled law library access as determined by the nature of the rules violation and the safety and security of the program and materials."

</div>

2. On September 5, 2002, plaintiff filed an Inmate Request for Legal Photocopy Services. Plaintiff's document consisted of 145 pages and he wanted defendant to copy it five times, for a total of 752 pages.

3. On September 12, 2002, defendant responded to plaintiff's request for photocopy services.

4. On September 13, 2002, defendant issued plaintiff a CDC 115 disciplinary for threatening defendant with physical harm.

5. On October 16, 2002, plaintiff was found guilty of misconduct with respect to the disciplinary defendant filed against him. The charge had been amended from threatening to disrespecting staff.

D.   Discussion

In his amended complaint, plaintiff alleges on September 13, 2002, he and defendant Oxford, a prison law librarian, had an argument over the condition of the law library, defendant's lack of knowledge of the law, and the filing of an appeal by plaintiff over the library conditions. Plaintiff alleges that during the argument, he pointed out defendant's sexual preferences. Plaintiff alleges that

defendant refused to "give" him law library then and over the next several weeks, and plaintiff was ultimately issued an CDC 115 (Rules Violation Report) for threatening staff. Plaintiff alleges that defendant Oxford, violated his due process rights by taking away his law library privileges without the benefit of a hearing. Plaintiff further alleges that defendant Oxford violated his First Amendment rights by issuing him a CDC-115 Rules Violation Report for threatening staff, in retaliation for filing an inmate appeal concerning library conditions.

### 1. Denial of Access to the Courts/Due Process Claim

Plaintiff's original and amended complaints were screened by this court pursuant to 28 U.S.C. § 1915A. Although plaintiff's original complaint contained a claim based on denial of access to the courts, plaintiff's amended complaint does not. (Docs. 16, 2:16-4:23; Doc. 21, p. 3 fn. 1.) However, plaintiff's amended complaint does allege a claim that defendant Oxford deprived plaintiff of a liberty interest without due process of law when defendant deprived plaintiff of law library access without a hearing. (Doc. 21, 3:16-4:17.) Over plaintiff's objections, this claim was dismissed from the action for failure to state a claim on May 25, 2004. (Docs. 22, 23.) Following the court's order, this action proceeded against defendant Oxford for retaliation only. (Doc. 24.)

Despite this case history, defendant moves for summary adjudication on plaintiff's access to the courts/due process claim. Defendant's motion does not have the effect of resurrecting a claim that was dismissed from this action by the court. Therefore, defendant's motion for summary adjudication on this claim will not be addressed by the court.

### 2. Retaliation Claim

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, No. 03-15335, 2005 WL 937814, at *5 (9th Cir. Apr. 25, 2005). The court must "'afford appropriate deference and flexibility' to prison officials in the

evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

On September 5, 2002, plaintiff filed an Inmate Request for Legal Photocopy Services seeking five copies of a one-hundred forty-five page document, for a total of seven-hundred fifty-two pages. (Undisputed Fact 2.) Defendant contends that he contacted the Clerk's Office for the Northern District of California and was told that one-hundred thirty-one of the one-hundred forty-five pages plaintiff wanted copied were already on file with the court. (Doc. 43, Exhibit A, Oxford Dec., ¶ 46.) Defendant contends that on September 12, 2002, he denied plaintiff's photocopy request and told plaintiff that much of the request was unnecessary because the court already had the documents. (Id.) Defendant contends that plaintiff became upset and began a tirade, screaming, yelling, using obscenities, and calling defendant names such as cock-sucker, faggot, and homo. (Id.) The next day, September 13, 2002, defendant wrote a CDC 115 (Serious Rules Violation Report) against plaintiff for threatening defendant with physical harm. (Undisputed Fact 4.) Plaintiff was subsequently found guilty of the reduced charge of disrespecting staff. (Undisputed Fact 5.)

Defendant argues that the issuance of the CDC 115 was not an adverse action that would chill a person of ordinary firmness. Further, defendant argues that the issuance of the CDC 115 was not retaliatory, but rather was based on a legitimate penological need brought about by plaintiff's actions.

The court finds that defendant has met his initial burden of informing the court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

Filing prison grievances is a protected activity, see Rhodes, 2005 WL 937814, at *5, and the issuance of a CDC 115 Serious Rules Violation Report, which can lead to a variety of punishments, is without question an adverse action. At issue here is not whether plaintiff was engaged in a protected activity when he filed his inmate appeal or whether the issuance of the CDC 115 was adverse to plaintiff.[3] Rather, at issue is whether the issuance of the CDC 115 advanced a legitimate correctional goal and whether the issuance of the CDC 115 chilled plaintiff's rights.

Plaintiff bears the burden of proving "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808. Plaintiff's conclusory assertions that the CDC 115 was false and that defendant issued it to retaliate against him are insufficient to meet this burden. Plaintiff admits that he had an argument with defendant and that he pointed out defendant's sexual preferences during this argument.[4] (Amend. Comp., § IV.) Following this argument, plaintiff was written up for threatening staff.

Maintaining order is a legitimate correctional goal. The court cannot think of any circumstance in which the act of arguing with and pointing out the sexual preferences of a prison employee by a prisoner would be proper conduct incapable of supporting subsequent disciplinary action. Plaintiff has provided neither argument nor evidence on this point, instead choosing to argue that he filed an inmate appeal prior to the issuance of the CDC 115, and that the CDC 115 was false and was issued against him because he filed the inmate appeal. In light of plaintiff's admission that prior to the issuance of the CDC 115 for threatening staff, plaintiff argued with defendant and pointed out defendant's sexual preferences, these arguments are insufficient to meet the burden of demonstrating that defendant's action did not serve a legitimate correctional goal. Plaintiff's argument that defendant's action did not serve a legitimate correctional goal because defendant failed

---

[3] In his opposition, plaintiff argues that he was engaged in a protected activity and that defendant's actions were adverse to him.

[4] In his motion, defendant misinterpreted the allegation to be that defendant pointed out plaintiff's sexual preferences.

7

to comply with certain regulations by failing to submit documents to the warden is not compelling.[5] (Doc. 47, Opp., 14:7-10.)  What regulations defendant did or did not follow with respect to suspending plaintiff's library privileges, etc. are irrelevant to the issue of whether defendant issued the CDC 115 to advance a legitimate correctional goal.  It is not enough for plaintiff to proffer an alternate theory behind the issuance the CDC 115.  Plaintiff must submit evidence that the action did not reasonably advance a legitimate correctional goal.  Plaintiff has not done so.[6]

Further, plaintiff has not submitted any evidence that defendant's actions chilled the exercise of his First Amendment rights.  Plaintiff's reliance on Rhodes in support of his opposition on this point is misplaced.  The Rhodes case involved the issue of what is sufficient, at the pleading stage, to state a claim for relief for retaliation.  Rhodes, 2005 WL 937814, at * 6.  At this stage in the action, plaintiff must present some evidence in support of his claim.  Plaintiff may not continue to rely on conclusory assertions in his opposition that his rights were chilled.[7]

In conclusion, the court finds that plaintiff has not submitted evidence raising any triable issues of fact with respect to his retaliation claim.  Specifically, plaintiff has not submitted any evidence that the issuance of the CDC 115 Rules Violation Report following his self-described argument with defendant did not reasonably advance a legitimate correctional goal.  Rhodes, 2005 WL 937814, at * 5.  The fact that because plaintiff filed an inmate appeal prior to the issuance of the CDC 115, the timing is plausible to support retaliation claim is, alone, insufficient where it is also a fact that the parties argued prior to the issuance of the CDC 115 and that very argument is the

---

[5] Although plaintiff directs the court's attention to Exhibit D in support of this argument, there are no exhibits for D.

[6] The court notes for the record that plaintiff's opposition was accompanied by more than two hundred pages of exhibits.  In opposing defendant's motion for summary adjudication on his retaliation claim, with limited exceptions, plaintiff did not support his opposition with citations to specific exhibits. (Doc. 47, Opp., pp. 13-17.) Although the court considered plaintiff's statements of undisputed and disputed facts, declaration, and exhibits in instances where plaintiff specifically cited to them, the court has no duty to search record for triable issues and did not wade through plaintiff's many pages of documentary exhibits in an effort to assist plaintiff in meeting what is his burden.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1029 (9th Cir. 2001).

[7] The pleading itself contains no such allegation.

8

asserted basis for the issuance of the CDC 115.[8]  In addition, although plaintiff has submitted evidence that the issuance of the CDC 115 was adverse to him, plaintiff has not submitted any evidence that he suffered a chilling effect.  Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's retaliation claim.

   E. Conclusion

  Based on the foregoing, it is HEREBY RECOMMENDED that defendant Oxford's motion for summary judgment, filed November 2, 2004, be GRANTED.

  These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: May 21, 2005**       /s/ Lawrence J. O'Neill
b9ed48            UNITED STATES MAGISTRATE JUDGE

---

[8] Defendant disputes that he "argued" with plaintiff while plaintiff disputes that he embarked on a "tirade."  For the purpose of resolving defendant's motion for summary judgment, the court adopts plaintiff's description of the incident.